IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| **MICHELLE ANTOINETTE MOORE,** § § | |
| Plaintiff, § § | |
| v. § | Civil Action No. 4:19-cv-00195-O-BP |
| § | |
| **ANDREW M. SAUL,** § | |
| **Commissioner of Social Security,** § § | |
| Defendant. § | |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

Plaintiff Michelle Antoinette Moore ("Moore") filed this action under 42 U.S.C. § 405(g), seeking judicial review of the denial by the Commissioner of Social Security ("Commissioner") of her application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA") and Supplemental Security Income ("SSI") payments under Title XVI. ECF Nos. 1 and 15. After considering the pleadings, briefs, and the administrative record, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **AFFIRM** the Commissioner's decision.

I.   STATEMENT OF THE CASE

Moore was born on October 29, 1986 and has at least a high school education. *See* SSA Admin. R. (hereinafter, "Tr.") 22, ECF No. 13-1. On the alleged disability onset date, she was a younger individual (between the ages of 18 and 44). Tr. 22. Moore filed applications for a period of disability, DIB, and SSI on May 18, 2016. Tr. 10. In all applications, Moore alleged that her disability began on February 1, 2014. *Id.* The Commissioner initially denied her claim on July 25, 2016 and denied it again on reconsideration on December 5, 2016. *Id.* Moore requested a hearing,

which was held before Administrative Law Judge ("ALJ") Kevin Batik on January 23, 2018 in Fort Worth, Texas, with Moore and a vocational expert ("VE") present. The ALJ issued his decision on June 8, 2018, finding that Moore was not disabled. Tr. 23.

Specifically, the ALJ employed the statutory five-step analysis and established during step one that Moore had engaged in substantial gainful activity during the following periods: April 1, 2015 to July 31, 2015; October 5, 2015 to January 31, 2016; March 27, 2017 to June 30, 2017; and July 1, 2017 to September 31, 2017. Tr. 13. However, the ALJ found there has been a continuous twelve-month period during which Moore did not engage in substantial gainful activity. Tr. 14. At step two, he determined that Moore had severe impairments of obesity, hidradenitis suppurativa, depression, anxiety, and post-traumatic stress disorder. *Id.* At step three, the ALJ found that Moore's impairments did not meet or equal in combination one of the impairments listed in 20 C.F.R. pt. 404(p). *Id.*

At step four, the ALJ ruled that Moore had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. 404.1567(b) and 416.967(a), except for the following limitations: occasional climbing of ramps and stairs, balancing, stooping, kneeling, and crouching; precluded from climbing ladders, ropes, or scaffolding or crawling; limited to understanding, remembering, and carrying out simple tasks and instructions; limited to occasional interaction with coworkers, supervisors, and the general public; and interaction in that context would be in person or over the phone or through some sort of communication device. Tr. 16. Additionally, he held that she was unable to perform her past relevant work. Tr. 21. At step five, he found that considering her age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she could perform. Tr. 22.

The Appeals Council denied review on January 9, 2019. Tr. 1. Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) ("[T]he Commissioner's 'final decision' includes the Appeals Council's denial of [a claimant's] request for review.").

## II.     STANDARD OF REVIEW

Title II, 42 U.S.C. § 404 et seq., of the SSA governs the disability insurance program in addition to numerous regulations concerning disability insurance. *See* 20 C.F.R. § 404 (2019). The SSA defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A) (2020); *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999).

To determine whether a claimant is disabled and thus entitled to disability benefits, the Commissioner employs a sequential five-step analysis. 20 C.F.R. § 404.1520. First, the claimant must not be engaged in any substantial gainful activity. *Id.* § 404.1520(a)(4)(i). "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002) (citing 20 C.F.R. § 404.1572(a)–(b)). Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(a)(4)(ii); *see Stone v. Heckler*, 752 F.2d 1099, 1100–03 (5th Cir. 1985). Third, disability exists if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). Fourth, the impairments must prevent the claimant from returning to past relevant work. *Id.* § 404.1520(a)(4)(iv). Before this step, the ALJ assesses

the claimant's RFC, which is "the most [a claimant] can still do despite [the claimant's] limitations." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); 20 C.F.R. § 416.945(a)(1). Fifth, impairments must prevent the claimant from doing any work after considering the claimant's RFC, age, education, and work experience. *Crowley*, 197 F.3d at 197–98; 20 C.F.R. § 404.1520(a)(4)(v).

"A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987). "The claimant bears the burden of showing [he or] she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

This Court reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standards and whether substantial evidence in the record as a whole supports the decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). "Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000) (internal quotation marks omitted) (quoting *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995)). The Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if substantial evidence is present. *Id.*; *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the Commissioner and

not the courts to resolve." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (internal punctuation omitted) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

### III. ANALYSIS

Moore raises two issues on appeal. She claims that the ALJ (1) improperly considered medical opinion evidence in determining her RFC and (2) failed to establish the existence of other work in significant numbers that she can perform consistent with the RFC and functional limitations which the ALJ found to exist. ECF No. 21 at 2.

**A. The ALJ properly considered medical opinion evidence in determining Moore's RFC.**

Moore argues that the ALJ erred by failing to properly consider medical opinion evidence in determining her RFC. ECF No. 15 at 3. Specifically, she asserts that the ALJ should have applied the factors set forth in 20 C.F.R. §§ 404.1527 and 416.927 and referred to the Commissioner's regulations to evaluate the opinion expressed by the nurse practitioner, Amy Kunkel, PMHNP. Further, Moore argues that the ALJ failed to recognize or consider the opinion of Carolyn Sasano, Ph.D., who performed a psychological consultative examination on behalf of the Department of Assistive and Rehabilitative Services. The Commissioner maintains that the ALJ specifically stated that he considered the opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927, and in doing so, properly considered the assessments of the State agency physicians, psychiatrists, and Nurse Kunkel.

For claims filed before March 27, 2017, the Social Security Administration classified medical sources into two categories: acceptable and other. *See* 20 C.F.R. § 416.927. Acceptable medical sources include physicians, psychologists, optometrists, podiatrists, and speech pathologists. 20 C.F.R. §§ 404.1513(a) and 416.913(a). Only an acceptable medical source "can establish the existence of a medically determinable impairment, give medical opinions, and be

considered treating sources whose medical opinions may be entitled to controlling weight." *Thibodeaux v. Astrue*, 324 F. App'x 440, 445 (5th Cir. 2009); SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006). Under the regulations, a nurse practitioner is not considered an acceptable medical source and falls under the category of other medical sources. *Matthews v. Colvin*, No. 4:15-CV-169-0-BL, 2016 WL 8710706, at *4 (N.D. Tex. Feb. 5, 2016), *rec. adopted*, No. 4:15-CV-169-O-BL, 2016 WL 1054599 (N.D. Tex. Mar. 17, 2016) (citing *Thibodeaux*, 324 F. App'x at 445).

Although other medical sources may not establish the existence of a medically determinable impairment, the information from these sources may provide insight into the severity of a claimant's impairments and ability to work. *See* SSR 06-03p, 2006 WL 2329939, at *4-5. Therefore, an ALJ is required to evaluate them in some depth. *Id.* at *3 ("Opinions from these [other] sources, who are not technically deemed 'acceptable medical sources' under our rules . . . should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file."). Additionally, adjudicators must explain the weight given to opinions from other sources or to "otherwise ensure that the discussion of the evidence . . . allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *Id.* at *6. While the ALJ can apply the factors listed in 20 C.F.R. §§ 404.1527(c) and 416.927(c), "[e]ach case must be adjudicated on its own merits based on a consideration of the probative value of the opinions and a weighing of all the evidence in that particular case." *Id.* at *5. "In determining what weight to give 'other medical evidence,' the ALJ has more discretion and is permitted to consider any inconsistencies found within the record." *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005).

On January 26, 2018, Nurse Kunkel completed a Mental Medical Assessment of Ability to Do Work-Related Activities, in which she diagnosed Moore with bipolar disorder, current episode

depressed, moderate; anxiety disorder, unspecified; and post-traumatic stress disorder. Tr. 827-28. On a checklist of mental abilities, she also indicated that Moore had an "extreme" loss of ability to cope with normal work stress without exacerbating pathologically based symptoms. *Id.* Additionally, she noted that Moore had "substantial" loss of ability to perform at a consistent pace, make simple work-related decisions, ask simple questions or request assistance, respond to changes in a routine work setting, and finish a normal work week without interruption from psychologically based symptoms. *Id.* She also assigned Moore a Global Assessment of Functioning (GAF) score of 48. Tr. 828.

In evaluating Nurse Kunkel's opinion, the ALJ first noted that she was not an acceptable medical source and that the medical source statement referenced clinical signs but did not refer to specific encounters corresponding with the active signs documented. Tr. 20. Thereafter, the ALJ focused on two of the six factors set forth in 20 C.F.R. §§ 404.1527(c) and 416.927(c), finding that the degree of debility conveyed in Nurse Kunkel's medical source statement contrasted with the contemporaneous treatment notes and that the opinion was inconsistent with the record as a whole. Tr. 20-21. Specifically, the ALJ pointed out that the two instances of "mild" attention and concentration difficulties noted by outpatient providers conflicted with Nurse Kunkel's report that Moore has a substantial loss of ability to perform at a consistent pace. Tr. 21. Additionally, he noted that Moore's consistently intact thought processes appeared at odds with Nurse Kunkel's opinion that Moore had a substantial loss of ability to make simple work-related decisions. *Id.* Further, he found that Moore's previously described reports reflecting stability, improvement, and the ability to cope were inconsistent with Nurse Kunkel's opinion that Moore had an extreme loss of ability to cope with normal work stress. *Id.* The ALJ also noted the GAF score of 48 appeared

7

inconsistent with the relatively stable signs throughout the period at issue and the relative stability documented across outpatient encounters. *Id.*

In determining Moore' RFC, the ALJ specifically stated that he had "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927." Tr. 16. Moreover, upon considering the opinions set forth in Nurse Kunkel's statement, whether contemporaneous treatment notes supported the limitations she assessed, and their consistency with the rest of the record evidence, the ALJ determined that some of the limitations were inconsistent with and not supported by substantial record evidence. It appears that the ALJ weighed Nurse Kunkel's opinion based upon the record evidence and in relation to other opinion evidence in the record as required by SSR 06-3p. Thus, the ALJ properly evaluated Nurse Kunkel's opinions and articulated appropriate reasons for assigning them partial weight. Accordingly, the ALJ did not commit reversible error and remand is not required as to this issue.

To the extent that Moore argues the ALJ erred by failing to consider Dr. Sasano's medical opinion supporting Nurse Kunkel's assessment, the undersigned finds that, contrary to Moore's assertion, the ALJ acknowledged Dr. Sasano's opinion and articulated appropriate reasons for discounting it. In addition to pointing out Dr. Sasano's opinion that Moore's intelligence was not a barrier to work or school, the ALJ highlighted that Dr. Sasano noted Moore had "scored in the average or superior range on cognitive tests, which demonstrated a preserved ability to understand and apply information." Tr. 15. Further, the ALJ indicated that Dr. Sasano had opined that Moore maintained several full-time positions for up to several months without any apparent understanding or memory issues. *Id.* Accordingly, Moore's argument that the ALJ did not mention the report of Dr. Sasano or that he did not give a basis for rejecting her conclusions is without merit.

**B.     The ALJ's step five findings are supported by substantial evidence.**

At step five, the ALJ utilized the VE to determine whether jobs existed in the national economy for an individual with Moore's age, education, work experience, and RFC. Based on the ALJ's hypothetical, the VE identified three jobs—document preparer, final assembler, and assembler—that Moore could perform, their Dictionary of Occupational Titles ("DOT") numbers, and the exertional and specific vocational preparation ("SVP") levels. Tr. 65. The VE also testified based on his professional experience regarding the number of available jobs in the national economy as to each of them. *Id.*

Moore argues that the ALJ failed to establish the existence of work in significant numbers which she could perform. ECF No. 15 at 12. She asserts that, as the jobs listed by the VE which she could perform require either a reasoning level of three according to the DOT (document preparer) or moderate-term on-the-job training according to the Occupational Outlook Handbook ("OOH") (final assembler and assembler), they did not conform to a limitation to "simple tasks and instructions" as found by the ALJ. *Id.* The Commissioner responds that the ability to understand, remember, and carry out simple tasks and instructions does not translate into an inability to perform jobs designated by the DOT as entailing a reasoning level of three. ECF No. 20 at 16. Further, the Commissioner contends that the ALJ properly relied on the VE's testimony and the DOT rather than on the Standard Occupational Classification ("SOC") in determining the existence of other work which Moore could perform.

Relying on the VE's testimony, the ALJ found that Moore could perform the job of document preparer, which is classified as requiring a reasoning level of three under the DOT. *See* DOT § 249.587-018 (4th ed., rev. 1991). The Fifth Circuit has not ruled on the issue, but there is a split of authority in other circuits on whether a claimant limited to simple tasks can perform jobs

9

that the DOT classifies as requiring a reasoning level of three. *Compare Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009) (no conflict between job requiring reasoning level three and claimant's limitation to simple work), *and Renfrow v. Astrue*, 496 F.3d 918, 921 (8th Cir. 2007) (no conflict with claimant's inability to do complex work where job in question required reasoning level three), *with Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (claimant's limitation to "simple and routine work tasks" not consistent "with the demands of level-three reasoning" because claimant's RFC was more consistent with level two than level three reasoning).

Judges in this Court who have confronted the issue likewise are divided. *Compare McMillian v. Colvin*, No. 4:12-CV-661-A, 2014 WL 61172, at *5 (N.D. Tex. Jan. 6, 2014) ("[T]here are a series of cases that have held that a job with a [reasoning level] of 3 is not inconsistent with an RFC determination that limits a claimant to the performance of simple, routine work tasks"), *with Otte v. Comm'r, Soc. Sec. Admin.*, 3:08-CV-2078-P BF, 2010 WL 4363400, at *8 (N.D. Tex. Oct. 18, 2010), *rec. adopted*, 3:08-CV-2078-P BF, 2010 WL 4318838 (N.D. Tex. Oct. 27, 2010) ("Reasoning Level 3 is not compatible with a restriction to simple, routine, repetitive work."), *and Davis v. Astrue*, No. 3-06-CV-883-B, 2008 WL 517238, at *5 (N.D. Tex. Feb. 27, 2008) (claimant limited to following simple or detailed instructions not capable of performing job with reasoning level three).

In this case, the undersigned need not pick a side in the conflict because the remaining jobs identified by the VE—final assembler and assembler—require only a reasoning level of two, *see* DOT §§ 713.687-018 and 734.687-018, and "[c]ourts have repeatedly found that jobs with a GED reasoning development level two are consistent with limitations to simple instructions and routine tasks." *Short v. Astrue*, No. 3:11-CV-713-N-BN, 2013 WL 655020, at *10 (N.D. Tex. Feb. 5, 2013), *rec. adopted*, No. 3:11-CV-713-N-BN, 2013 WL 655022 (N.D. Tex. Feb. 22, 2013).

Moore focuses on information provided by the OOH in asserting that the jobs of final assembler and assembler are inconsistent with the limitation to simple work because they require moderate-term, on-the-job training. Although the VEs and the agency can use multiple sources, including the OOH, to determine whether a claimant may perform a job existing in the national economy, the OOH is not the controlling source. *See* 20 C.F.R. §§ 404.1566(d), 416.966(d). According to the DOT relied upon by the VE, the jobs of final assembler and assembler have an SVP of two and are classified as having strength demands of sedentary work, which are consistent with the ALJ's RFC determination that Moore has the ability to understand, carry out, and remember short and simple tasks and instructions. The VE testified that 40,000 final assembler positions and 50,000 assembler positions exist in the national economy. Tr. 65. Therefore, even taking as true Moore's argument that the job of document preparer does not comport with the ALJ's restriction to simple tasks and instructions and those jobs are conflicted out, work remains in significant numbers in the national economy for Moore to perform. Accordingly, the undersigned finds that the ALJ's step five finding is supported by substantial evidence.

### IV. CONCLUSION

The ALJ properly evaluated the opinions of Nurse Kunkel and Dr. Sasano in his RFC assessment. He also properly established at step five the existence of work in significant numbers that Moore can perform. In doing so, the ALJ applied the correct legal standards, and substantial evidence supports his decision. For these reasons, the undersigned **RECOMMENDS** that Judge O'Connor **AFFIRM** the Commissioner's decision.

A copy of this Findings, Conclusions, and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Findings, Conclusions, and Recommendation must file specific written objections within 14 days after being served with

a copy. *See* 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

    Signed on January 31, 2020.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE